1 | ZOLKIN TALERICO LLP
Derrick Talerico (State Bar No. 223763)
2 | dtalerico@ztlegal.com
David B. Zolkin (State Bar No. 155410)
3 | dzolkin@ztlegal.com
12121 Wilshire Blvd., Suite 1120
4 | Los Angeles, CA 90025
Telephone:    (424) 500-8552
5 | Facsimile:     (424) 500-8951
6
7 | COHNE KINGHORN, P.C.
George Hofmann (Utah Bar No. 10005)
8 | *pro hac vice pending*
111 East Broadway, 11th Floor
9 | Salt Lake City, UT 84111
Telephone: (801) 363-4300
10
11 | Proposed Attorneys for Larada Sciences, Inc.,
Debtor and Debtor-in-Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA - NORTHERN DIVISION**

| | |
|---|---|
| In re:<br><br>LARADA SCIENCES, INC.,<br>a Utah corporation,<br><br>        Debtor and Debtor-<br>        in-Possession. | Case No. 9:21-bk-10269-DS<br><br>Chapter 11<br><br>**EMERGENCY MOTION FOR ORDER AUTHORIZING THE DEBTOR TO CONTINUE USE OF ITS EXISTING BANK ACCOUNTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**Hearing Information:**<br>**Date**:     [To be Set]<br>**Time**:    11:30 a.m.<br>**Courtroom**: 201<br>             1415 State Street<br>             Santa Barbara, CA 93101<br>*(Zoom or Telephonic appearances only)* |

Larada Sciences, Inc. (the "Debtor"), debtor and debtor in possession in the above-captioned bankruptcy case, through its undersigned proposed counsel, hereby moves this Court (the "Motion") on an emergency basis for an order authorizing the Debtor to continue using its existing bank accounts (the "Motion"). The declarations of Claire Roberts and Gil A. Miller in support of the Motion are being filed concurrently with the Motion.

## MEMORANDUM OF POINTS OF AUTHORITIES

### I. JURISDICTION AND VENUE

This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.

This is a core proceeding under 28 U.S.C. § 157(b).

Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

The statutory predicates for the relief requested herein are 11 U.S.C. §§ 105(a), 345, 363, 1107, and 1108.

### II. BACKGROUND

#### A. The Commencement of the Case

On March 19, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Bankruptcy Code, in the United States Bankruptcy Court for the Central District of California, Northern Division.

Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtor is managing its assets and properties as debtor-in-possession.

No trustee or examiner has been appointed, and no official committee of creditors or equity interest holders has yet been established.

#### B. Background Related to Debtor's Business

Larada is a Delaware corporation formed in 2006, initially based on utilizing technology licensed from the University of Utah with the goal of taking a newly developed treatment for head lice to market. Since the inception of its business, Larada has become an established franchisor in the professional lice treatment business, and accordingly provides services to support its franchisees including but not limited to developing a national brand (Lice Clinics of America), hosting franchisee websites and related online lead generation, digital marketing, national marketing, local

marketing, operations best business practices, training, and more - all necessary to operate a professional lice treatment business. Beginning in 2014, Larada conducted business under the trade name "Lice Clinics of America (LCA)." Its website is located at: liceclinicsofamerica.com

As part of the franchisor services, Larada provides franchisees with AirAllé® devices, which are exclusive FDA-cleared medical devices that kill head lice and lice eggs in a single treatment, using heated air to quickly dessicate head lice. The LCA lice treatment process which incorporates the use of the AirAllé® is faster and more effective than the older, traditional methods of removing head lice, which generally have required multiple uses of a specialized comb to physically remove lice from the head combined with continued use of topical products or shampoos, typically using pesticides, and often taking weeks to eradicate the lice infestations. The AirAllé® device forces air at just the right temperature under the hair and close to the scalp where the lice feed and lay their eggs. This causes the lice and lice eggs to quickly dehydrate and die and therefore with a one-hour appointment clients are lice-free without the use of pesticides. Through its franchisees (and one company owned location) Larada has provided over 700,000 such lice treatments.

Larada's franchisees serve a crucial role in the ability of Larada to reorganize successfully.

In addition to the franchise business, the Debtor also markets pesticide free do-it yourself home treatment products directly to consumers (and these products are also offered wholesale to the franchisees for retail distribution through their locations).

Larada does business under the name "Lice Clinics of America," as well as "Lice Clinics of Australia", "Lice Clinics of Canada" and so forth depending on the country. Between franchise locations and the single clinic owned by Larada, there are currently 230 clinics licensed to operate across 26 countries, down from a high of over 260 licensed clinics pre-COVID. Larada currently has 153 franchised clinics open and operating in the United States and approximately 16 locations currently open in 25 foreign countries. Approximately 61 of the 230 clinics worldwide are still temporarily closed due to COVID.

C. **Background Related to Relief Requested**

The Debtor maintains relationships with approximately 125 non-debtor licensees and franchisees worldwide (the "Franchisees" and each a "Franchisee"). These relationships are

memorialized in written franchise and/or license agreements (the "Franchise Agreements" and each a "Franchise Agreement").

The revenue derived from Franchisee operations accounts for the majority of Debtor's total revenue.

The Debtor currently maintains its primary operating bank account at First Republic Bank, a financially stable banking institution insured by the FDIC, and whose account number is 80008658587 (the "Primary Account").

The Debtor also maintains a bank account which it set up in conjunction with a Paycheck Protection Program loan at Brighton Bank, a financially stable banking institution insured by the FDIC, and whose account number is 20003836 (the "PPP Account").

The Debtor currently maintains a multi-component cash management process and system which facilitates the operation of Franchisee businesses, calculates and accounts for the appropriate amount of payment due from each Franchisee, and processes the payment due from each Franchisee.

The Debtor's cash management system includes three primary, yet unconnected, components. First, the vast majority of Franchisees use a point of sale software which facilitates the scheduling of clinic appointments between Franchisees and clients, generates invoices for services performed with the Debtor's technology and produces sales data used by the Franchisees to report to Debtor on a minimum of a monthly basis.

Second, the Debtor uses a reporting tool in which Franchisees enter sales data which is then compiled into a shared data platform which the Debtor accesses. Once the Debtor has access to the Franchisees' financial reporting, the Debtor may choose to audit the reported data by comparing certain Franchisee reports with a physical meter located on the applicable treatment devices. The Debtor then calculates the amount owed to the Debtor by each Franchisee and creates an invoice for each Franchisee.

Third, the vast majority of Franchisees have standing instructions which permit the Debtor to automatically process each Franchisee's preferred credit card for the invoiced amount ("Franchisee Payments"). These Franchisee Payments are processed by the Debtor's established merchant processor and funds are delivered into the Primary Account.

The Debtor is aware, based on past experiences, that changing the merchant processing of the Franchisee Payments to a new bank account is not a simple procedure. The process would be time consuming and could result in delayed Franchisee Payments.

The uninterrupted receipt of Franchisee Payments is critical to the Debtor's ability to continue its operations and successfully reorganize.

In addition to receiving Franchisee Payments, the Debtor also pays the vast majority of the Debtor's automatic recurring expenses (the "Automatic Payments") from its Primary Account. Approximately 20 different vendors and service providers critical to the Debtor's operations and support of the Franchisees' websites and digital marketing programs automatically debit the Primary Account on a monthly basis, on different schedules.

The purpose of the Automatic Payments is not only to pay for services used directly by the Debtor but also to pay for services which the Debtor is obligated to provide to Franchisees, including business support, marketing support, and online promotional services.

The Debtor is aware, based on past experiences, that changing all of the Automatic Payments to a new bank account will be time consuming.

The uninterrupted processing of the Automatic Payments is critical to the Debtor's ability to continue its operations because any delay in payment could result in the Debtor failing to timely satisfy the Debtor's obligations to its Franchisees, thereby damaging the Debtor's relationship with its Franchisees, and causing a significant interruption to its Franchisees' businesses, which rely heavily on having uninterrupted hosted website services (such as online booking of appointments) and an online digital marketing presence, as a head lice treatment is typically an "emergency" for the family dealing with it.

With respect to the PPP Account, the Debtor set up this account to receive and handle the proceeds from the Debtor's recent Paycheck Protection Program loan ("PPP Loan"). The Debtor used a separate account for this purpose as it was a requirement by Brighton Bank to have an operating account to be eligible to receive a PPP Loan. Once the PPP Loan proceeds are expended, the Debtor will not open a replacement account given the specific, unique purpose of the PPP Account.

## III. RELIEF REQUESTED

The Operating Guidelines for Chapter 11 Cases established by the Office of the United States Trustee (the "Guidelines") generally require a chapter 11 debtor to, among other things: (i) close all existing bank accounts; (ii) open new debtor in possession bank accounts; (iii) establish one debtor in possession account for the payment of taxes, including payroll taxes; (iv) maintain a separate debtor in possession account for cash collateral; and (v) obtain checks bearing the designation "debtor in possession," the case number, and the type of account. In order to minimize disruption to the Debtor's operations during the pendency of this case, the Motion requests entry of an Order authorizing the Debtor to continue use of the Primary Account and the PPP Account, rather than open new debtor in possession accounts, including a new segregated account for the payment of taxes.

Alternatively, and as a secondary option if the Court is not inclined to grant Debtor's preferred course of cash management, the Debtor proposes that it continue to use its pre-petition accounts for all purposes for up to two months (the "Transition Period") and thereafter only to collect deposits from Franchisees that continue to make payment to the pre-petition accounts with the following conditions (the "Alternative Proposal"). During the Transition Period, the Debtor proposes to: (1) immediately open all required DIP accounts, in addition to a segregated account designated to hold collections on pre-petition receivables (the "Cash Collateral Account"),[1] at a depository approved by the United States Trustee; (2) sweep cash collected on pre-petition invoices for deposit in the Cash Collateral Account not less than once per week, (3) sweep cash collected from sales of inventory produced pre-petition into the cash collateral DIP account, (4) diligently work to transition Automatic Payments to be drawn from a DIP account; and (5) not less than once per week, sweep unrestricted funds from pre-petition accounts to a DIP account to the extent the Debtor determines in its business judgment that such funds will not reasonably be needed to satisfy Automatic Payments anticipated to be drawn from the pre-petition account(s).

---

[1] The Debtor anticipates its primary secured creditor will allege the collections on pre-petition receivables are its cash collateral and will not consent to use of such funds.

## IV. BASIS FOR RELIEF REQUESTED

### A. The Debtor's Continued Use of Its Bank Account Is in the Best Interests of the Debtor and Its Estate.

Generally, bankruptcy courts treat a request for authority to continue utilizing bank accounts as a relatively "simple matter." In re Baldwin-United Corp., 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987); see also In re Charter Co., 778 F.2d 617, 621 (11th Cir. 1985) (affirming district court decision denying creditor's motion for leave to appeal bankruptcy court's cash management order, holding that authorizing the debtors to utilize their pre-petition bank accounts and "routine cash management system" was "entirely consistent" with applicable provisions of the Bankruptcy Code); In re Voyager Express, Inc., 2009 Bankr. LEXIS 4598 (Bankr. D. Colo. 2009) (authorizing debtor to continue to use existing bank account in connection with a debtor in possession financing motion).

Courts have noted the "huge administrative burden" and economic inefficiency of requiring the debtor to maintain all accounts separately. Columbia Gas, 997 F.2d 1039, 1061(3d. Cir. 1993); see also In re Southmark Corp., 49 F.3d 1111, 1114 (5th Cir. 1995) (maintaining existing bank accounts and cash management system allows a debtor "to administer more efficiently and effectively its financial operations and assets").

Section 363(c)(l) of the Bankruptcy Code authorizes a debtor to "use property of the estate in the ordinary course of business without notice or a hearing." The purpose of section 363(c)(l) is to provide a debtor in possession with the flexibility to engage in ordinary course transactions required to operate its business without unnecessary oversight by creditors or the court. See, e.g. In re Roth Am., Inc., 975 F.2d 949, 952 (3d Cir. 1992) ("Section 363 is designed to strike [a] balance, allowing a business to continue its daily operations without excessive court or creditor oversight and protecting secured creditors and others from dissipation of the estate's assets.") (internal quotation omitted); In re Nellson Nutraceutical Inc., 369 B.R. 787, 796 (Bankr. D. Del. 2007).

"A debtor in possession under Chapter 11 is generally authorized to continue operating its business." Amdura Nat'l Distrib Co. v. Amdura Corp. (In re Amdura Corp.), 75 F.3d 1447, 1453 (10th Cir. 1996) (questioned on other grounds); see also 11 U.S.C. §§ 1107 & 1108. In addition, "routine transactions" between bank accounts under a debtor's cash management system are covered

under § 363(c).  Amdura Nat'l Distrib Co., 75 F.3d at 1453.

To the extent the Debtor's continued use of the Primary Account or the PPP Account falls outside of the "ordinary course of business," the Court may approve such continued use as within the reasonable business judgment of the Debtor.  Bankruptcy Code §§ 1107 and 1108 authorize a debtor in possession to operate its business as a trustee in a chapter 11 case. See e.g In re FitzSimmons, 725 F.2d 1208, 1210 (9th Cir. 1984) (Sections 1107 and 1108 authorize a debtor in possession to "operate the debtor's business during the course of the bankruptcy proceedings," and furthermore, "[o]peration of the business is the rule, not the exception, in a Chapter 11 case.").

Courts afford broad deference to the reasonable business judgment of a debtor in possession. See Bennett v. Williams, 892 F.2d. 822, 824 (9th Cir. 1989).

Moreover, the Court may exercise its equitable powers to grant the relief requested herein. Section 105(a) empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of this title."  It is within the Court's equitable power under § 105(a) to approve the continued use of the Primary Account and the PPP Account.

The Debtor submits that in its business judgment, allowing the Debtor to continue to use its Primary Account during this bankruptcy case is appropriate given: (a) the Debtor's need to preserve the value of its business; (b) the time, cost, and disruption associated with closing the Primary Account and opening a new bank account; (c) the potential risk that the Franchise Payments could be delayed; and (d) the Debtor has concurrently moved the Court for an Order approving, but not directing, the Debtor to satisfy its obligations to its Franchisees.  It is essential to the Debtor's successful reorganization that the Debtor maintain its relationships with its Franchisees with as little disruption as possible.

Under the circumstances of this case, the Debtor respectfully submits that closing its existing Primary Account and PPP Account, and then opening new accounts would result in needless costs in both time and money, with no discernible benefit to the Debtor's estate.

**B.     The Primary Account and PPP Account Comply with 11 U.S.C. §345.**

Bankruptcy Code Section 345 governs a debtor's deposits and investments during a chapter 11 case.  Section 345(a) provides that a debtor is authorized to deposit money "as will yield the

maximum reasonable net return on such money, taking into account the safety of such deposit or investment."

Section 345(b) provides: "Except with respect to a deposit or investment that is insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States" a bond or deposit of securities is required from the institution where funds are deposited.

The Primary Account is established at First Republic Bank and the PPP Account is established at Brighton Bank, both of which are federally insured banking institutions. (See FDIC website and searchable database at: https://research2.fdic.gov/bankfind/). Accordingly, the Debtor believes that the Primary Account and the PPP Account are substantially in compliance with Section 345.

For the foregoing reasons, the Debtor requests that this Court waive the requirements under the Guidelines that the Debtor close its existing bank accounts, open new bank accounts, establish a bank account for taxes, and establish a bank account for cash collateral. Absent such authorization, significant and unnecessary disruption to the Debtor's business will occur. As such, the Debtor requests that it be allowed to maintain its existing business forms such as checks, purchase orders, and deposit slips without being required to replace them with new forms containing "debtor-in-possession" designations. Given the fact that the Debtor does very little retail business with the public, replacing the forms would be a needless and unnecessary expense, providing little to no benefit to this estate or its creditors.

The Debtor represents that if the relief requested in this Motion is granted, the Debtor will not pay any debts incurred before the Petition Date other than as authorized by this Court.

If the Court approves the Debtor's preferred cash management proposal, the Debtor would retain the right to: (i) close either account and open new debtor in possession bank accounts; (ii) deposit funds in, and withdraw funds from the Primary Account and the PPP Account through all usual means, including, without limitation, checks, drafts, wires, transfers and other debits; (iii) treat the Primary Account and PPP Account for all purposes as debtor in possession accounts; and (iv) pay for bank services in the ordinary course of business.

Case 9:21-bk-10269-DS    Doc 2    Filed 03/19/21    Entered 03/19/21 20:48:33    Desc
Main Document    Page 10 of 12

To ensure that the Primary Account and the PPP Account continue without disruption regardless of the cash management proposal approved by the Court, the Debtor requests that the Court authorize and direct First Republic Bank and Brighton Bank to continue to maintain, service, and administer the Primary Account and the PPP Account.

The Debtor further requests that First Republic Bank and Brighton Bank be authorized to: (a) rely upon the representations of the Debtor with respect to whether any check, draft, wire, or other transfer drawn or issued by the Debtor prior to the Petition Date should be honored; (b) honor the Debtor's directions with respect to the opening and closing of any bank account; and (c) accept and hold, or invest, the Debtor's funds in accordance with the Debtor's instructions.

## V.    SATISFACTION OF BANKRUPTCY RULE 6003

Bankruptcy Rule 6003 empowers this Court to grant relief regarding a motion to use, sell or lease property of the estate if the relief is necessary to avoid immediate and irreparable harm. Immediate and irreparable harm exists where the absence of relief would impair the Debtor's ability to reorganize or threaten its future as a going concern.  See In re Ames Dep't Stores, Inc., 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule 4001).

As described above, the Primary Account is integral to the Debtor's continued business operations.  For example, the Primary Account allows the Debtor to: (a) receive the Franchise Payments through the Debtor's existing cash management procedure; (b) satisfy the Automatic Payments and thereby satisfy certain obligations to its Franchisees; and (d) pay operating expenses. If the Debtor is required to close its Primary Account immediately, the Debtor would need to expend resources and time to establish a new account, which delay and disruption would be prejudicial to the Debtor's operations.  Accordingly, the Debtor respectfully submits that the facts and equities of this Motion satisfy the requirements of Bankruptcy Rule 6003.

Additionally, to successfully implement the foregoing, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay under Bankruptcy Rule 6004(h) to the extent such Bankruptcy Rules are applicable.

**VI.    CONCLUSION**

WHEREFORE, pursuant to 11 U.S.C. §§ 105(a), 345, 363, 1107, and 1108, the Debtor respectfully requests the entry of an Order, authorizing the Debtor to continue to use the Primary Account and the PPP Account, and to continue to use its existing cash management procedure. Alternatively the Debtor repsectfully requests the entry of an Order authorizing the Debtor to implement the Alternative Proposal. The Debtor also requests such other relief as is just and proper.

DATED:   March 19, 2021                ZOLKIN TALERICO LLP

By: /s/ Derrick Talerico
Derrick Talerico
David B. Zolkin

and
COHNE KINGHORN, P.C.
George Hofman (Utah Bar No. 10005)
111 East Broadway, 11th Floor
Salt Lake City, UT 84111
(*pro hac vice pending*)
Proposed Attorneys for Larada Sciences, Inc.,
Debtor and Debtor-in-Possession

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
   12121 Wilshire Blvd, Suite 1120, Los Angeles, CA 90025

A true and correct copy of the foregoing document entitled (*specify*): **EMERGENCY MOTION FOR ORDER AUTHORIZING THE DEBTOR TO CONTINUE USE OF ITS EXISTING BANK ACCOUNTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF,** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) March 19, 2021, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- US Trustee's Office:  ustpregion16.la.ecf@usdoj.gov
- Attorneys for Debtor:  Derrick Talerico:  dtalerico@ztlegal.com; maraki@ztlegal.com; sfritz@ztlegal.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) March 19, 2021, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

| | |
|---|---|
| The Honorable Deborah J. Saltzman<br>United States Bankruptcy Court<br>255 E. Temple Street, Suite 1634<br>Los Angeles, CA 90012 | Via US Priority Mail |

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 19, 2021 | Martha Araki | */s/ Martha Araki* |
|---|---|---|
| Date | Printed Name | Signature |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**