ZOLKIN TALERICO LLP
Derrick Talerico (State Bar No. 223763)
dtalerico@ztlegal.com
David B. Zolkin (State Bar No. 155410)
dzolkin@ztlegal.com
12121 Wilshire Blvd., Suite 1120
Los Angeles, CA  90025
Telephone:     (424) 500-8552
Facsimile:     (424) 500-8951

COHNE KINGHORN, P.C.
George Hofmann (Utah Bar No. 10005)
*pro hac vice pending*
111 East Broadway, 11th Floor
Salt Lake City, UT 84111
Telephone:  (801) 363-4300

Proposed Attorneys for Larada Sciences, Inc.,
Debtor and Debtor-in-Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - NORTHERN DIVISION

| | |
|---|---|
| In re:<br><br>LARADA SCIENCES, INC.,<br>a Utah corporation,<br><br>               Debtor and Debtor-<br>               in-Possession. | Case No. 9:21-bk-10269-DS<br><br>Chapter 11<br><br>**MOTION FOR AN ORDER (I) AUTHORIZING, BUT NOT DIRECTING, THE DEBTOR TO HONOR OBLIGATIONS TO ITS FRANCHISEES IN THE ORDINARY COURSE, AND (II) GRANTING RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**Hearing Information:**<br>**Date**:     April 14, 2021<br>**Time**:     11:30 a.m.<br>**Courtroom**: 201<br>                1415 State Street<br>                Santa Barbara, CA 93101<br>*(Zoom or Telephonic appearances only)* |

Larada Sciences, Inc. (the "Debtor"), debtor and debtor in possession in the above-captioned bankruptcy case, through its undersigned proposed counsel and pursuant to Title 11 of the United States Code (the "Bankruptcy Code") §§ 105, 363, 1107(a) and 1108 and Bankruptcy Rules 2002 and 4001, hereby moves this Court (the "Motion") to enter an order (i) authorizing, but not directing, the Debtor to honor its obligations to its franchisees in the ordinary course and (ii) granting related relief.  The declarations of Claire Roberts and Gil A. Miller in support of the Motion are being filed concurrently with the Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    JURISDICTION AND VENUE**

This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are 11 U.S.C. §§ 105(a), 363, 1107, and 1108.

**II.    BACKGROUND**

**A.    The Commencement of the Case**

On March 19, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Bankruptcy Code, in the United States Bankruptcy Court for the Central District of California, Northern Division.  Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtor is managing its assets and properties as debtor-in-possession.  No trustee or examiner has been appointed, and no official committee of creditors or equity interest holders has yet been established.

**B.    Background Related to Debtor's Business**

Larada is a Delaware corporation formed in 2006, initially based on utilizing technology licensed from the University of Utah with the goal of taking a newly developed treatment for head lice to market.  Since the inception of its business, Larada has become an established franchisor in the professional lice treatment business, and accordingly provides services to support its franchisees including but not limited to developing a national brand (Lice Clinics of America), hosting franchisee websites and related online lead generation, digital marketing, national marketing, local

marketing, operations best business practices, training, and more - all necessary to operate a professional lice treatment business. Beginning in 2014, Larada conducted business under the trade name "Lice Clinics of America (LCA)." Its website is located at: liceclinicsofamerica.com

As part of the franchisor services, Larada provides franchisees with AirAllé® devices, which are exclusive FDA-cleared medical devices that kill head lice and lice eggs in a single treatment, using heated air to quickly dessicate head lice. The LCA lice treatment process which incorporates the use of the AirAllé® is faster and more effective than the older, traditional methods of removing head lice, which generally have required multiple uses of a specialized comb to physically remove lice from the head combined with continued use of topical products or shampoos, typically using pesticides, and often taking weeks to eradicate the lice infestations. The AirAllé® device forces air at just the right temperature under the hair and close to the scalp where the lice feed and lay their eggs. This causes the lice and lice eggs to quickly dehydrate and die and therefore with a one-hour appointment clients are lice-free without the use of pesticides. Through its franchisees (and one company owned location) Larada has provided over 700,000 such lice treatments.

Larada's franchisees serve a crucial role in the ability of Larada to reorganize successfully.

In addition to the franchise business, the Debtor also markets pesticide free do-it yourself home treatment products directly to consumers (and these products are also offered wholesale to the franchisees for retail distribution through their locations).

Larada does business under the name "Lice Clinics of America," as well as "Lice Clinics of Australia", "Lice Clinics of Canada" and so forth depending on the country. Between franchise locations and the single clinic owned by Larada, there are currently 230 clinics licensed to operate across 26 countries, down from a high of over 260 licensed clinics pre-COVID. Larada currently has 153 franchised clinics open and operating in the United States and approximately 16 locations currently open in 25 foreign countries. Approximately 61 of the 230 clinics worldwide are still temporarily closed due to COVID.

C.  **Background Related to Relief Requested**

The Debtor maintains relationships with approximately 125 licensees and franchisees worldwide (the "Franchisees" and each a "Franchisee"). These relationships are memorialized in

written franchise and/or license agreements (the "Franchise Agreements" and each a "Franchise Agreement"). Currently the revenue derived from the Debtor's relationships with its Franchisees accounts for approximately 65% of the Debtor's total revenue.

The Debtor is responsible for fulfilling the following obligations, among others, according to the terms of its Franchise Agreements (the "Obligations"):

   a. Granting the right to use the Debtor's trademarks and service marks;
   b. Granting the right to use other intellectual property owned or licensed by the Debtor, including patents;
   c. Providing certain Franchisees with up to four AirAllé devices per clinic;
   d. Providing replacement devices when Franchisees request replacement of non-functioning devices;
   e. Returning device deposits to Franchisees, which range in amount from $500-$800 per device, upon a Franchisee's return of AirAllé devices;
   f. Continuing to provide for a predetermined fee, certain accessories and parts for a Franchisee's AirAllé device. These parts and accessories are necessary for AirAllé devices to function and the Debtor is the only source of these parts and accessories;
   g. Providing ongoing training and certification to Franchisee employees. Clinic technicians are required to be properly certified prior to using the AirAllé devices and the Debtor is the only source of proper certification;
   h. Providing an ongoing supply of professional services products, which include applicator tips and topical products used in the treatment provided by Franchisees. The Debtor is the only source for compatible applicator tips;
   i. Providing initial owner training and ongoing owner training as requested by a Franchisee;
   j. Providing ongoing access to the Debtor's operations manual;
   k. Maintaining the online resource portal through which Franchisees may access training, support, and marketing materials;

  l. Providing hosting, and maintaining a location specific domain name, email address, and website for each Franchisee;

  m. Providing, hosting, and maintaining a dedicated landing page for each Franchisee's clinic on the website www.liceclinicsofamerica.com;

  n. Providing letters of medical necessity from the Lice Clinics of America National Medical Director;

  o. when appropriate for insurance reimbursement purposes, as requested by a Franchisee;

  p. Providing Franchisees with access, for a specified fee, to Meevo 2, a point of sale system customized for lice treatment clinics;

  q. Providing call-tracking phone numbers for Franchisee's clinics and marketing campaigns;

  r. Providing, for a specified fee, ongoing digital marketing services for Franchisees, including services related to search engine optimization, Google AdWords, Facebook advertising, and call-tracking software;

  s. Providing "Lice Clinics of America" branded retail products for Franchisees to sell in their clinics; and

  t. Providing general clinic operational support as needed.

Continuing to honor the vast majority of the Obligations after the Petition Date will clearly involve nothing more than the Debtor continuing in the ordinary course of its business. While a debtor-in-possession does not need to seek the authorization from the bankruptcy court in order to engage in transactions in the ordinary course of its business pursuant to sections 1107 and 1108 of the Bankruptcy Code, complying with certain Obligations could arguably be construed as paying a Franchisee on account of a prepetition claim.[1] In particular, the Debtor is holding deposits made by

---

[1] The Debtor does not assert that honoring any Obligation constitutes satisfying a prepetition claim, nor is the Debtor acknowledging that any claims exist between the Debtor and Franchisees. The Debtor reserves the right to deny and defend against any and all claims asserted by Franchisees and to dispute the nature and character of any asserted claims. The Debtor maintains that all actions contemplated under this Motion fall under the ordinary course of the Debtor's business and that while this Motion is arguably not necessary in order for the Debtor to undertake the actions contemplated herein, the Debtor files this Motion out of an abundance of caution and in order to

its Franchisees ranging between $500-$800 per AirAllé device that the Franchisee has received from the Debtor.  When a Franchisee returns one or more devices to the Debtor, the Debtor will be obligated to return the respective device deposits.  While the Debtor asserts that such an exchange still constitutes a transaction made in the ordinary course of the Debtor's business, the Debtor seeks authorization, but not direction, to fulfill the Obligations to the extent that any Obligation is interpreted to involve paying a prepetition claim postpetition. The Debtor estimates based on past history that deposit returns in any given month will likely be less than $6,500.

Debtor's fulfillment of certain Obligations is necessary in order for the Franchisees to operate, for example, among other things, the provision of products which are used or consumed in conjunction with treatments and for which the Debtor is the Franchisees' sole source of supply. Other Obligations directly impact the Franchisees' business operations, such as, among other things, the provision of online marketing services, a dedicated website, cell-tracking phone numbers, device support and replacement, and access to point of sale systems.

If the Franchisees are unable to provide treatments to customers because the Debtor has failed to honor certain Obligations, the Debtor's revenue would likely be significantly impacted.  In addition, if Franchisees are no longer receiving marketing, online, telephone, and other support services at the Debtor's expense, the Franchisee's business may suffer and the Franchisees may simply decide to stop paying the Debtor under the terms of the Franchise Agreements.  It is vital to the Debtor's ability to successfully restructure that the Debtor continue to receive the licensing, royalty, and other revenue due under the Franchise Agreements from the Franchisees (the "Franchise Revenue").

In addition, if the Debtor fails to honor the specific Obligation to return device deposits upon the return of AirAllé devices from its Franchisees, the Franchisees may refuse to return devices to the Debtor and may take further actions to damage the brand and reputation of the Debtor, like discouraging potential future franchisees from doing business with the Debtor or operating the Debtor's devices outside of the terms of the Franchise Agreements.  In order to preserve its relationships with Franchisees, preserve the value of its brand, and retain the essential Franchise

---

provide full and complete disclosure.

Revenue, the Debtor seeks authorization, but not direction, to honor its Obligations to the Franchisees.

### III. RELIEF REQUESTED

By this Motion, the Debtor seeks the entry of the Order, pursuant to Bankruptcy Code sections 105(a), 363, 1107, and 1108.  Specifically, the Debtor seeks authority, but not direction, to continue paying for or otherwise satisfying the Obligations to the Franchisees, in the ordinary course of business, to the extent that any Obligations arose prior to the Petition Date.

### IV. BASIS FOR RELIEF

The Debtor submits that satisfaction of the Obligations is appropriate pursuant to sections 105, 363, 1107(a), and 1108 of the Bankruptcy Code and is appropriate under the doctrine of necessity.

Furthermore, it is premature for Debtor to formally assume or reject any executory contracts at this early stage of the Case.  However, assuming that the Franchise Agreements are executory contracts capable of assumption or rejection under the Bankruptcy Code, authorizing the Debtor to honor the Obligations permits the Debtor to have continued flexibility on the issue of assumption and rejection while still preserving its revenues and brand value.

#### A. Relief is Supported by §§ 1107 and 1108

Sections 1107 and 1108 of the Bankruptcy Code authorize a debtor in possession to "operate" a debtor's business, unless the Court "orders otherwise."  11 U.S.C. §§ 1108, 1107. "When the debtor's business is being operated under §§ 1107 and 1108, § 363(c)(1) gives the debtor-in-possession authority to enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and to use property of the estate in the ordinary course of business without notice or a hearing." In re First Prot., Inc., 440 B.R. 821, 832–33 (B.A.P. 9th Cir. 2010).  While the Bankruptcy Code does not provide much guidance on what activity constitutes the "ordinary course" of business, the Ninth Circuit has applied both the vertical dimension test and the horizontal dimension test to determine whether a transaction falls within the ordinary course of business.  See id; see also In re Dant & Russell, Inc., 853 F.2d 700, 704 (9th Cir. 1988).  This analysis is applicable in cases where a debtor in possession is operating its

business pursuant to §§ 1107 and 1108 and is engaging in transactions which implicate §363. See id.

The horizontal dimension test asks "whether the postpetition transaction is of a type that other similar businesses would engage in as ordinary business." In re Dant & Russell, Inc., 853 F.2d 700, 704 (9th Cir. 1988). "[A] transaction occurs in the debtor-in-possession's ordinary course of business when there is a showing that the transaction is the sort occurring in the day-to-day operation of debtor's business." Id. Here, all of the Obligations were agreed to and have been consistently performed by the Debtor on a day-to-day basis up until the Petition Date. Because the Obligations are clearly articulated in the Franchise Agreements, it is easy to show that the Obligations are the sort of transactions which occurred daily and regularly on a prepetition basis.

"The vertical dimension, or creditor's expectation test, views [a] disputed transaction 'from the vantage point of a hypothetical creditor and inquires whether the transaction subjects a creditor to economic risks of a nature different from those he accepted when he decided to extend credit.'" Id at 705 (quoting In re Johns-Manville Corp., 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986)). Under this analysis, postpetition transactions are compared to prepetition transactions to determine whether the postpetition transactions "either by their size, nature or both are not within the day-to-day operations of a business and are therefore extraordinary." In re Waterfront Companies, Inc. v. Johnston, 56 B.R. 31, 35 (Bankr. D. Minn. 1985). The Obligations in no way vary in scale or nature after the Petition Date, they remain the same as they were prepetition and are therefore, not extraordinary.

### B.   Relief is Supported by § 363

The Debtor's rights under the Franchise Agreements became property of the Debtor's bankruptcy estate on the Petition Date. See 11 U.S.C. § 541(a)(1); see also In re Vylene Enterprises, Inc., 90 F.3d 1472, 1476 (9th Cir. 1996) ("franchise agreement and the rights conferred therein are clearly assets of the bankruptcy estate").

Section 363(c)(1) of the Bankruptcy Code expressly grants the Debtor the authority to "enter into transactions…in the ordinary course of business, without notice or a hearing, and [to] use property of the estate in the ordinary course of business…." The Debtor submits that satisfying the Obligations is in the ordinary course of the Debtor's business. Therefore, the Debtor will be able to

continue to honor the Obligations on an ongoing basis after the Petition Date.

In addition, the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. 363(b)(1). And as a debtor in possession, Debtor may exercise the rights and powers that a trustee would have under section 363(b)(1). 11 U.S.C. § 1107(a).

To the extent that the relief requested in this Motion will involve the Debtor using postpetition assets to satisfy prepetition obligations or satisfying prepetition obligations postpetition, bankruptcy courts have allowed for the immediate payment of certain prepetition obligations pursuant to section 363(b) of the Bankruptcy Code. See In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989); see also Burchinal v. Cent. Wash. Bank (In re Adams Apple, Inc.), 829 F.2d 1484, 1490 (9th Cir. 1987) (discussing contexts in which "unequal treatment of pre-petition debts when necessary for rehabilitation" is appropriate); In re Lehigh & New England Ry. Co., 657 F.2d 570, 581 (3d Cir. 1981) (holding that bankruptcy court may authorize payment of prepetition claims if such payment is essential to continued operation of debtor).

In order for a debtor to dispose of property of the estate pursuant to 363(b), the debtor "must demonstrate that such disposition has a valid business justification," and "has been proposed in good faith." In re 240 N. Brand Partners, Ltd., 200 B.R. 653, 659 (B.A.P. 9th Cir. 1996). In addition, the disposition must be in the best interest of the estate. See In re Kellogg-Taxe, No. 2:12-BK-51208-RN, 2014 WL 1016045, at *4 (Bankr. C.D. Cal. Mar. 17, 2014).

Specifically, "the debtor must articulate some business justification, other than mere appeasement of major creditors." In re Ionosphere Clubs, Inc., 98 B.R. at 175; accord In re Continental Air Lines, Inc., 780 F.2d 1223, 1226 (5th Cir.1986); In re Baldwin–United Corp., 43 B.R. 888, 905–906 (Bankr. S.D. Ohio 1984).

This Motion is proposed in good faith. The Franchise Agreements which give rise to the Obligations, also grant the Debtor certain rights. The fulfillment of the Obligations will constitute nothing more than carrying on business as usual for the Debtor.

The Debtor submits, that sound business judgment justifies its ongoing payment of the Obligations, which are necessary to preserve the Debtor's rights under the Franchise Agreements. In

addition, the relief requested in this Motion is in the best interest of the Debtor's bankruptcy estate since it is essential to the Debtor's ability to successfully reorganize. The Debtor's relationships with its Franchisees are at the core of its business. The Debtor believes that if those relationships are disrupted, the Debtor's revenues will plunge, making it impossible to service its debt and turn a profit.

### C. Relief is Supported by the Doctrine of Necessity

The Debtor's rights under the Franchise Agreements are the basis for the Franchise Revenue that comprises approximately 65% of the Debtor's total revenue. The Franchise Revenue will provide the Debtor with the platform it will need to successfully reorganize. In order to preserve the Debtor's rights under the Franchise Agreements, the Debtor must continue to perform on the Obligations. Based on historical averages, the Debtor estimates that between $3,000-$6,500 of Franchisee deposits may need to be returned to various Franchisees in any given month following the Petition Date. The Debtor's failure to honor this Obligation may result in Franchisees refusing to return devices and taking actions to damage the brand and business of the Debtor.

To the extent that honoring the return of Franchise deposits constitutes paying a prepetition debt, such payment is supported by section 105(a) of the Bankruptcy Code. Section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Under the doctrine of necessity (or the necessity of payment rule), a bankruptcy court may exercise its powers under Section 105 "to authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor." In re Ionosphere Clubs, Inc., 98 B.R. at 175; see also In re Lehigh & New England Railway Company, 657 F.2d 570, 581 (3rd Cir.1981).

"[R]ehabilitation of the debtor is a paramount goal of chapter 11" 2 COLLIER ON BANKRUPTCY ¶ 105.02[4][a] (Alan N. Resnick & Henry J. Sommer eds., 16th rev. ed.); see also NLRB v. Bildisco & Bildisco, 465 U.S. 513, 528 (1984). If the Debtor is unable to continue to honor the Obligations, including the return of device deposits where appropriate, a likely result would be a substantial reduction in the Debtor's revenue. Moreover, if the Debtor does not or cannot satisfy the Obligations to its Franchisees, the Franchisees may permanently cease franchise

operations which would significantly, if not irreparably, harm the Debtor's business and render it incapable of reorganizing.

## V. SATISFACTION OF BANKRUPTCY RULE 6004(a) and 2002

To the extent this Court finds that the relief requested herein constitutes the use or sale of property not in the ordinary course of the Debtor's business, the Debtor respectfully requests a finding that (x) the notice requirements under Bankruptcy Rules 6004(a) and 2002, as applicable, are met and (y) that, if applicable, the 14-day stay has been waived.

## VI. CONCLUSION

WHEREFORE, the Debtor respectfully requests the entry of an order (i) authorizing, but not directing, the Debtor to honor prepetition obligations to its franchisees in the ordinary course, (ii) granting related relief and (iii) granting such other and further relief as the Court deems just and proper.

DATED: March 19, 2021

ZOLKIN TALERICO LLP

By: /s/ Derrick Talerico
Derrick Talerico
David B. Zolkin

and

COHNE KINGHORN, P.C.
George Hofman (Utah Bar No. 10005)
111 East Broadway, 11th Floor
Salt Lake City, UT 84111
(*pro hac vice pending*)

Proposed Attorneys for Larada Sciences, Inc., Debtor and Debtor-in-Possession

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
   12121 Wilshire Blvd, Suite 1120, Los Angeles, CA 90025

A true and correct copy of the foregoing document entitled (*specify*): **MOTION FOR AN ORDER (I) AUTHORIZING, BUT NOT DIRECTING, THE DEBTOR TO HONOR OBLIGATIONS TO ITS FRANCHISEES IN THE ORDINARY COURSE, AND (II) GRANTING RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF,** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) March 19, 2021, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- US Trustee's Office: ustpregion16.la.ecf@usdoj.gov
- Attorneys for Debtor: Derrick Talerico: dtalerico@ztlegal.com; maraki@ztlegal.com; sfritz@ztlegal.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 19, 2021 | Martha Araki | */s/ Martha Araki* |
|---|---|---|
| Date | Printed Name | Signature |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                          **F 9013-3.1.PROOF.SERVICE**